UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                            :

In re                                         :

TS EMPLOYMENT, INC.,                   :

                      :

                Debtor,        :

                      :

------------------------------------------------------------- :

                      :

JAMES S. FELTMAN, *not individually but solely* :
*as chapter 11 trustee for TS Employment, Inc.*, :

                      :

                Plaintiff,      :                   22-CV-7624 (JMF)

                      :

        -v-                     :          OPINION AND ORDER

                      :

TRI-STATE EMPLOYMENT SERVICE, INC., et al., :

                      :

                Defendants,    :

                      :

                and            :

                      :

JOFAZ TRANSPORTATION, INC. et al., :

                      :

                Third-Party Respondents. :

                      :

------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        Plaintiff James S. Feltman, the Chapter 11 Trustee (the "Trustee") for Debtor TS

Employment, Inc. ("TSE"), obtained a large default judgment in an adversary proceeding

brought against Tri-State Employment Service, Inc. ("Tri-State") in Bankruptcy Court.

Thereafter, the Trustee sought to collect on that judgment from Third-Party Respondents Jofaz

Transportation, Inc. ("Jofaz"), Y&M Transit Corp. ("Y&M") and Third Avenue Transit, Inc.

("Third Avenue" and, collectively with Jofaz and Y&M, "Respondents"), alleging that

Respondents owed money to Tri-State for unpaid invoices.  On July 8, 2022, the United States

Bankruptcy Judge for the Southern District of New York (by Bankruptcy Judge Martin Glenn) issued proposed findings of fact and conclusions of law recommending that the Trustee's motion for partial summary judgment be granted and that judgment be entered against Respondents in the amount of $1,391,569.75 plus pre-judgment interest. *See In re TS Emp., Inc.*, 641 B.R. 753, 768 (Bankr. S.D.N.Y. 2022) (ECF No. 119).[1]  Respondents timely filed six objections to the Bankruptcy Court's proposed findings of fact and conclusions of law. *See* 22-CV-7624, ECF No. 4 ("Resps.' Mem."), at 2-24.  For the reasons that follow, the Court concludes that the objections are meritless and adopts the proposed findings and conclusions of law in full.

## BACKGROUND

The following background, drawn from the Bankruptcy Court's proposed findings and the parties' submissions to this Court, is undisputed unless otherwise noted.

### A. Procedural History

TSE filed a voluntary Chapter 11 bankruptcy petition on February 2, 2015. *See In re TS Emp., Inc.*, 641 B.R. at 757.  On February 27, 2015, the Trustee was appointed as TSE's Chapter 11 trustee under section 1104(a) of the Bankruptcy Code. *See id.*  Just under two years later, the Trustee commenced an "adversary proceeding" against Tri-State and other defendants to recover hundreds of millions of dollars improperly transferred by TSE. *See id.*  On June 18, 2019, the Bankruptcy Court entered default judgment in favor of the Trustee and against Tri-State for nearly $100 million plus post-judgment interest. *See Feltman v. Tri-State Emp. Serv., Inc. (In re TS Emp., Inc.)*, 602 B.R. 840 (Bankr. S.D.N.Y. 2019).  A few months later, the Trustee filed a "turnover motion" seeking entry of an order pursuant to Rule 69 of the Federal Rules of Civil

---

[1]      Unless otherwise noted, all record citations are to the docket in the underlying bankruptcy action, Adversary Proceeding No. 17-1013 (MG) (S.D.N.Y. Bankr.).

Procedure and N.Y. CPLR 5227 directing Respondents (which are related entities) to pay to the Trustee money Respondents allegedly owed to Tri-State.  *See* ECF No. 66, at 2.

On March 2, 2020, the Bankruptcy Court entered a Case Management & Scheduling Order, which set a deadline for all fact discovery of June 1, 2020.  *See* ECF No. 74.  The Trustee served requests for production on March 6, 2020; by contrast, Respondents served no discovery requests before the fact-discovery deadline.  *See* ECF 77 ("June 17, 2020 Tr."), at 4-6.  In response to the Trustee's requests, Respondents produced business records consisting of Tri-State invoices totaling approximately $2.7 million for services rendered between November 30, 2015, and December 27, 2015, and Respondents' corresponding check stubs.  *See* ECF Nos. 97-8 to 97-20.  In a conference held on July 28, 2020, counsel for Respondents requested that the Trustee produce any documents that he intended to use at trial and asked for leave to depose the Trustee about those documents.  *See* ECF No. 80 ("July 28, 2020 Tr."), at 24.  In response, the Bankruptcy Court stated: "I'm not reopening discovery generally . . . .  That has long since closed.  There was never a timely request to serve late discovery requests, and I'm not reopening discovery now."  *Id.* at 28.  The Bankruptcy Court, however, directed the Trustee to provide Respondents with any "document[] that [it] expect[s] to use" at trial.  *Id.*

On October 7, 2020, Respondents filed an opposition to the turnover motion arguing that the turnover motion was improperly brought under CPLR 5227 because it concerned a disputed debt, that Respondents' right to a jury trial precluded adjudication of the parties' disputes by a judge, that the Bankruptcy Court lacked subject-matter jurisdiction because the matter was not "related to" a case under title 11, and that the turnover motion was unsupported by the evidence.  *See* ECF No. 83-1, at 6-15.  On November 2, 2020, Respondents moved in this Court to withdraw the reference of the turnover motion from the Bankruptcy Court.  *See* ECF No. 87.  A few months later, the Trustee sought a pre-motion conference with the Bankruptcy Court to

schedule summary judgment motion practice.  *See* ECF No. 89.  On November 2, 2021 — before the Bankruptcy Court had addressed either Respondents' opposition to the turnover motion or the Trustee's request to schedule summary judgment motion practice — the Honorable John P. Cronan of this Court denied Respondent's motion to withdraw the reference.  Judge Cronan did so based in part on the fact that "[b]oth Respondents and the Trustee [had] initiated dispositive motion practice before the Bankruptcy Court and the matters they raise remain unresolved."  *In re: TS Emp., Inc.*, 20-CV-9558 (JPC), 2021 WL 5087928, at *3 (S.D.N.Y. Nov. 2, 2021).

On December 16, 2021, the Bankruptcy Court conducted a conference about summary judgment practice.  *See* ECF No. 105.  The Trustee indicated that he intended to move for summary judgment.  *See id.* at 13-14.  In response, Respondents indicated that they would "likely cross-move for summary judgment, or at least partial summary judgment"; they made no mention of their pending opposition to the turnover motion.  *Id.* at 14.  On January 14, 2022, the Trustee filed a motion for partial summary judgment, relying upon a series of invoices, check stubs, handwritten notes, and QuickBooks accounting records provided by Respondents.  *See* ECF Nos. 95, 97-8 to 97-20.  Respondents did not cross-move for summary judgment, but filed an opposition to the Trustee's motion on February 25, 2022.  *See* ECF Nos. 103, 104.  Notably, Respondents largely reiterated the arguments they had made in their October 7, 2020 opposition to the turnover motion, while adding that the Bankruptcy Court was required to rule on Respondents' turnover opposition before ruling on summary judgment.  ECF No. 104, at 9-23.

On May 24, 2022, the Bankruptcy Court heard oral argument on the Trustee's motion. *See* ECF No. 112 ("May 24, 2022 Tr.").  At the hearing, the Trustee pointed to invoices and check stubs demonstrating that Tri-State had issued invoices totaling $2.7 million to Respondents, of which Respondents had paid $763,000 and to which potential offsets totaling $568,000 applied.  *Id.* at 6-7.  Accordingly, the Trustee argued that Respondents should be

required to pay $1.391 million plus post-judgment interest.  *Id.* at 7.  The Bankruptcy Court

asked Respondents whether there were "any documents in the record . . . that reflect[] amounts

that the respondents were required or subject to paying that should have been paid by Tri-State?"

*Id.* at 37-38.  After repeated questioning, Respondents admitted "no, there is nothing I can point

to."  *Id.* at 39.  Similarly, after further colloquy regarding the amount owed by Respondents to

Tri-State, Respondents repeatedly stated that they could not point to any evidence in the record

disputing the amount owed.  *Id.* at 40-41, 52-53, 59-60.  Following oral argument, the Trustee

submitted a letter indicating that if the Bankruptcy Court granted the partial summary judgment

motion, he would not pursue any further relief from Respondents.  *See* ECF No. 110.

**B.  The Proposed Findings of Fact and Conclusions of Law**

On July 8, 2022, the Bankruptcy Court issued its proposed findings of fact and

conclusions of law.  *See In re TS Emp., Inc.*, 641 B.R. at 756.  To the extent relevant here, the

Bankruptcy Court began by rejecting Respondents' arguments with respect to subject-matter

jurisdiction.  The Court noted that, under 28 U.S.C. § 1334(b), "a civil proceeding is related to a

title 11 case if the action's outcome might have any conceivable effect on the bankrupt estate."

*Id.* at 765 (citing *Sub-Culture, LLC v. Rogers Invs. (In re Culture Project)*, 571 B.R. 555, 561

(Bankr. S.D.N.Y. 2017)).  Applying that test, the Court concluded that the "conceivable effect"

on the bankrupt estate here was "clear" because the action concerns "unpaid Tri-State Invoices

for the direct benefit of TSE's Chapter 11 estate."  *Id.*  Next, the Bankruptcy Court rejected

Respondents' assertion that it could not rule on the Trustee's motion for summary judgment

without first ruling on Respondents' objection to the turnover motion.  *See id.*  The Court noted

that "Respondents cite[d] to no authority to support this assertion, apart from an 'implicit . . .

understanding, if not direction' from [Judge Cronan in his opinion denying the motion to

withdraw] that the Court would" rule on Respondents' opposition.  *Id.*  The Bankruptcy Court

concluded that "there was no such directive [in Judge Cronan's opinion] — implicit or otherwise — requiring" a decision on the turnover opposition prior to deciding the Trustee's motion for summary judgment.  *Id.*

Turning to the merits, the Bankruptcy Court first concluded that the Trustee stated a valid claim under CPLR 5227.  *Id.* at 766.  The Court explained that the cases cited by Respondents in their argument to the contrary "each held that a specific debt in question was too contingent or conditional," while the debt at issue in this case was "not contingent or conditional on some future event."  *Id.*  Next, the Bankruptcy Court found "that there is no dispute that (i) Tri-State provided . . . services to the Respondents, (ii) the Respondents produced the Business Records related to Tri-State's . . . services rendered from November 30, 2015 through December 27, 2015, and (iii) the Respondents maintained the QuickBooks Records that they produced to the Trustee."  *Id.* at 766-67 (citations omitted).  The Court found that the "Business Records and QuickBooks Records show[ed] that the Respondents [had] made a partial payment to Tri-State in the amount of $763,464.14" and that Respondents had "identified" offsets totaling $568,636.68, leaving "an undisputed amount" in unpaid invoices "of $1,391,569.75."  *Id.* at 767 (citations omitted).  The Court reasoned that because the Trustee had "met his initial burden of showing no genuine dispute as to this amount, the Respondents ha[d] the burden to resist partial summary judgment by citing to specific materials in the record."  *Id.*  The Court found that Respondents failed to cite to any specific materials in the record to resist summary judgment.

For these reasons, the Bankruptcy Court recommended that the Trustee's partial summary judgment motion be granted and that judgment be entered against Respondents in the amount of $1,391,569.75 (specifically, against Jofaz in the amount of $1,104,465.64; against Y&M in the amount of $197,192.04; and against Third Avenue in the amount of $89,912.07).  *Id.* at 768. Additionally, the Bankruptcy Court concluded that the Trustee was entitled to 9% pre-judgement

interest under N.Y. CPLR 5001(a), (b), and 5004.  *Id.*  The Court agreed with the Trustee's argument that, "conservatively, the invoices became due January 25, 2016, the date Respondents issued checks in partial payment of the December 2015 invoices (and several weeks after stopping on the original checks)" and thus concluded that "using the starting date of January 25, 2016[,] for computing pre-judgment interest is reasonable."  *Id.* (cleaned up).

## LEGAL STANDARD

Where a proceeding is "otherwise related to a case under title 11," and the parties have not consented to entry of final judgment by the Bankruptcy Court, the Bankruptcy Court "shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."  28 U.S.C. § 157(c)(1).  The district court must then "make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule."  Fed. R. Bankr. P. 9903(d).  The district court may then "accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions."  *Id.*

Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, the standards applicable to a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure apply here.  Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Est. of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016).  A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the

7

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

Critically, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs*., 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  To defeat a motion for summary judgment, however, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).  Affidavits submitted in support of, or opposition to, summary judgment must be based on "personal knowledge," must "set out facts that would be admissible in evidence," and must "show that the affiant or declarant is competent to testify on the matters stated."  *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

**DISCUSSION**

Respondents make six objections to the Bankruptcy Court's proposed findings of fact and conclusions of law.  First, Respondents argue that the Bankruptcy Court "should not have authorized, heard, or decided the Trustee's Motion for Summary Judgment without addressing the Respondents' Objection and Opposition to the Turnover Motion."  Resps.' Mem. 2.  Second, they contend that the Bankruptcy Court "should not have considered the Trustee's Motion for Summary Judgment, which was untimely under the Bankruptcy Court's Case Management and Scheduling Order."  *Id.* at 6.  Third, Respondents "object to the Bankruptcy Court's Proposed Finding that 'Respondents' debt owed to Tri-State satisfies the requirements of NY CPLR 5201, and the Turnover Motion states a valid claim under NY CPLR 5227.'"  *Id.* at 8 (citing ECF No. 119).  Fourth, they "object to the Bankruptcy Court's Proposed Finding that the Bankruptcy Court has jurisdiction over this matter as 'arising in or related to a case under title 11.'"  *Id.* at 13 (citing ECF No. 119).  Fifth, Respondents object to the Bankruptcy Court's finding that there is no genuine dispute as to any material fact through a variety of disputes over evidence.  *Id.* at 19.  And finally, Respondents "object to the Bankruptcy Court's award of pre-judgment interest."  *Id.* at 22.  The Court will address each objection, albeit in a different order.

**A.  Subject-Matter Jurisdiction**

The Court begins with Respondents' challenge to subject-matter jurisdiction as it is a threshold issue.  District courts have original jurisdiction over "all cases under title 11" and "all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334.  District courts may, in turn, refer all such cases or proceedings to the bankruptcy courts, *see* 28 U.S.C. § 157(a), as this Court has by Standing Order, *see Standing Order of Reference Re: Title 11*, Order M10-468, No. 12-MC-32 (LAP) (S.D.N.Y. Jan 31, 2012).  The Supreme Court has admonished that Sections 1334 and 157 should be construed broadly, recognizing that

9

"Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (cleaned up).  Consistent with that admonition, the Second Circuit has explained that "related to" jurisdiction applies to every case where "the action's outcome might have any conceivable effect on the bankrupt estate."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339-40 (2d Cir. 2018) (quoting *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011)).  For example, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  *Id.* at 340 (quoting *Celotex*, 514 U.S. at 308 n.6).

      In light of that standard, Respondents' argument is easily rejected.  As the Bankruptcy Court concluded, the outcome of this case could plainly have a "conceivable effect on the bankrupt estate."  *Id.*  Indeed, the effect is not just conceivable or conditional — entering the proposed judgment against Respondents would result in the TSE estate being enlarged by well over a million dollars.  In fact, as the Trustee notes, the award in this case may well be one of the estate's largest potential assets.  22-CV-7624, ECF No. 5 ("Trustee's Mem."), at 19.  Respondents' argument to the contrary misses the mark.  They argue that the case is "too tangential" to the bankruptcy case because the "claim for state law breach of contract damages[] does not arise under Title 11, has no common facts with the Bankruptcy Proceeding, and has no common facts with the underlying adversary proceeding."  Resps.' Mem. 17.  But that is not the test for "related to" jurisdiction.  As noted, for a case to fall within "related to" jurisdiction, it need only have a conceivable effect on the bankrupt estate.  This one plainly does.

      Respondents urge the Court in the alternative to "abstain from exercising jurisdiction, pursuant to 28 USC § 1334(c), in the interest of justice, in the interest of comity with State courts

and/or respect for State law." Resps.' Mem. 17.  It is doubtful whether this argument is properly

raised as an objection to proposed findings of fact and conclusions of law.  Among other things,

the question of abstention is ordinarily addressed by the bankruptcy court in the first instance.

*See, e.g.*, Fed. R. Bankr. P. 5011 advisory committee note (1987) ("The bankruptcy judge

ordinarily will be in the best position to evaluate the grounds asserted for abstention.").[2]  In any

event, even if Respondents' request were procedurally proper, it is without merit — especially at

this late juncture.  This case has been pending since 2019, and it would be extraordinarily

inefficient to send it back to square one in state court.  Moreover, as discussed above, the case

has a direct and demonstrable effect on the bankrupt estate.  And the issues of state law are

neither especially difficult nor unsettled.  Accordingly, to the extent the Court has discretion to

abstain under Section 1334(c), the factors that govern the analysis plainly call for exercising,

rather than abstaining from, jurisdiction in this case.  *See Masterwear Corp. v. Rubin Baum*

*Levin Constant & Friedman (In re Masterwear Corp.)*, 241 B.R. 511, 520-21 (Bankr. S.D.N.Y.

1999) (describing the factors used by courts in considering abstention under Section 1334(c)).

## B.  Procedural Objections

Respondents' two procedural objections — that the Bankruptcy Court should not have

decided the motion for partial summary judgment without first addressing their opposition to the

turnover motion and that the Bankruptcy Court should not have considered the Trustee's motion

for summary judgment because it was untimely, *see* Resps.' Mem. 2, 6 — can be swiftly

rejected.  The Supreme Court "has long recognized that a district court possesses inherent

---

[2]     Notably, Respondents did raise the issue of abstention in their motion to withdraw the
reference.  Judge Cronan ruled that "[t]he Bankruptcy Court may appropriately address those
questions in the first instance."  *In re TS Emp.*, 2021 WL 5087928, at *4.

powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630-631 (1962). These inherent powers include the "authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Id.* at 47.

Both of the Bankruptcy Court's challenged decisions fell well within the broad scope of these inherent powers. First, by deciding the Trustee's motion for summary judgment, the Bankruptcy Court efficiently resolved the case in its entirety. Respondents do not identify any "express rule or statute" that the Bankruptcy Court violated by proceeding in this manner. *Id.* at 46. Nor can Respondents establish that they were prejudiced in any way, as the Bankruptcy Court considered (and rejected) all of the arguments that they had made in their opposition to the turnover motion. Second, the Bankruptcy Court acted well within its discretion in allowing the Trustee to file a summary judgment motion rather than requiring a trial in the absence of genuine disputes of material fact. *See* Fed. R. Civ. P 56(b) (permitting the court to change the deadline for a summary judgment motion); *see also* Fed. R. Bankr. P. 7056. Contrary to Respondents' suggestion, Resps.' Mem. 7-8, that is true even though the Bankruptcy Court denied Respondents' request to reopen discovery after it had closed. Respondents made zero discovery requests before the deadline for fact discovery and failed to request an extension of the discovery deadline before it expired. *See* June 17, 2020 Tr. at 4-6. Even then, "[t]here was never a timely request to serve late discovery requests." *Id.* at 28; *see* Fed. R. Civ. P. 16(b)(4) (providing that a scheduling order "may be modified only for good cause and with the judge's consent"); *see also* Fed. R. Bankr. P. 7016(a).

**C.  N.Y. CPLR 5227 and Sufficiency of the Evidence**

Respondents' third and fifth objections both take issue with the merits of the Bankruptcy

Court's decision.  *See* Resps.' Mem. 8-13, 19-22.  The gravamen of Respondents' third objection

is that their liability to Tri-State did not constitute a "debt" under N.Y. CPLR 5201 subject to

collection under N.Y. CPLR 5227 because it was a "contested contract claim."  Resps.' Mem. 8-

13.  In making this argument, however, Respondents rely — as they did before the Bankruptcy

Court, *see* ECF No. 104, at 1-2 — on cases involving contingent or conditional claims.  Resps.'

Mem. 9-10 (citing *Colonial Press of Mia., Inc. v. Bank of Com.*, 337 N.Y.S.2d 817, 818-19 (First

Dep't App. Term 1972), and *Supreme Merch. Co., Inc. v. Chem. Bank*, 514 N.E.2d 1358, 1360-

61 (1987)).  But the debt at issue here was not contingent or conditional; it arose from unpaid

invoices for a sum certain.  *See In re TS Emp., Inc.*, 641 B.R. at 766.  The fact that Respondents

disputed the existence of that debt (albeit really only in part) did not render CPLR 5227

inapplicable.  To the contrary, the statute contemplates disputes over the existence of a debt.  *See*

N.Y. CPLR 5227 ("Costs of the proceeding shall not be awarded against a person who did not

dispute the indebtedness.").  And courts regularly entertain actions under CPLR 5227 even

where the existence of a debt is in dispute.  *See, e.g.*, *Trs. of 1199/SEIU Greater N.Y. Ben. Fund

v. Sieger*, No. 07-CV-9744 (DLC), 2010 WL 3911474, at *4 (S.D.N.Y. Oct. 5, 2010) (holding, in

an action brought pursuant to Rule 69 and CPLR 5227, that the court had authority to resolve the

parties' dispute over the existence of the loan at issue and whether the loan was due).

Respondents' objections to the Bankruptcy Court's assessment of the evidence also miss

the mark.  Respondents' own records — which were plainly admissible as either business

records, *see* Fed. R. Evid. 803(6), statements of a party-opponent, *see* Fed. R. Evid. 802(d)(2), or

both — established that Tri-State had billed Respondents for $2,723,670.57 and that

Respondents had made partial payments totaling $763,464.14.  *See* ECF Nos. 97-8 to 97-20;

Trustee's Mem. 20.  As the Bankruptcy Court correctly found, that evidence was sufficient to establish liability on an "account stated" theory under New York law.  *See, e.g.*, *White Diamond Co., Ltd. v. Castco, Inc.*, 436 F. Supp. 2d 615, 624 (S.D.N.Y. 2006) ("[P]artial payment . . . after receipt of an account stated [is] evidence of assent to the account stated.").  In arguing otherwise, Respondents point to an October 21, 2016 letter from their counsel to Tri-State refusing to pay the invoices at issue because of alleged unpaid Tri-State taxes.  *See* Resps.' Mem. 9; *see also* ECF No. 103-9.  But that letter does not defeat the Trustee's account stated claim, both because it was sent more than nine months after the invoices at issue, *see, e.g., Healthcare Cap. Mgmt., LLC v. Abrahams*, 751 N.Y.S.2d 460, 461 (First Dep't App. Div. 2002) (holding that an objection was untimely if made six months after an invoice became due), and because it did not dispute the invoices or the quality of the work for which the invoices were issued, *see, e.g.*, *Banker v. Esperanza Health Sys., Ltd.*, No. 05-CV-4115 (DAB) (JCF), 2011 WL 838909, at *6 (S.D.N.Y. Feb. 2, 2011), *report and recommendation adopted*, 2011 WL 867217 (S.D.N.Y. Mar. 10, 2011).  At most, the letter alluded to a separate, potentially offsetting liability.  Significantly, however, the Bankruptcy Court credited Respondents for *all* of the offsetting liabilities that they identified, totaling $568,636.68, *see In re TS Emp., Inc.*, 641 B.R. at 767; ECF No. 96, at 10-13, and Respondents explicitly conceded that they had no evidence to support additional offsets, *see* May 24, 2022 Tr. at 60.

On this record, the Bankruptcy Court correctly concluded that the Trustee had "met his initial burden of showing no genuine dispute" that Respondents owed Tri-State $1,391,569.75 and that Respondents had "the burden to resist partial summary judgment by citing to specific materials in the record."  *In re TS Emp., Inc.*, 641 B.R. at 767.  Respondents argue that, in doing so, the Bankruptcy Court improperly shifted the burden of proof to them.  *See* Resps.' Mem. 20-21.  But that argument is meritless.  Under Rule 56 (and Bankruptcy Rule 7056), the non-moving

14

party "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb*, 84 F.3d at 518 (citation omitted).  Thus, to defeat the Trustee's motion for summary judgment, Respondents were (and are) required to point to specific admissible evidence in the record that creates a genuine dispute of material fact.  Respondents failed — and continue to fail — to do so.  Indeed, at the oral argument on the motion for summary judgment, Respondents explicitly admitted under repeated questioning that there was no evidence in the record that disputed the Trustee's showing.  *See* May 24, 2022 Tr. at 39-41, 52-53, 59-60.  In short, the Bankruptcy Court correctly concluded that there was no dispute of material fact.

**D.  Pre-Judgment Interest**

Respondents' sixth and final objection is to the Bankruptcy Court's award of pre-judgment interest dating to January 25, 2016.  Resps.' Mem. 22-23.  Respondents primarily argue that the award of pre-judgment interest is unfair because they would have been paying an insolvent corporation and that they contested the debt in good faith.  These arguments fail for at least two reasons.  First, they are not proper objections because Respondents did not make them before the Bankruptcy Court.  *See In re TS Emp., Inc.*, 641 B.R. at 768 ("Respondents did not object or challenge the Trustee's entitlement to pre-judgment interest.").  As courts in this Circuit have held, "new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Ahmad v. Day*, No. 20-CV-4507 (AT), 2022 WL 2452231, at *1 (S.D.N.Y. July 6, 2022).  Second, and in any event, the award of prejudgment interest is mandatory under N.Y. CPLR 5001(a), and Respondents provide no basis to dispute the Bankruptcy Court's determination that January 25, 2016 — after partial payment was made and additional checks had been stopped — was "the earliest ascertainable date the cause of action existed."  N.Y. CPLR 5001(b).

## CONCLUSION

The Court has considered all of Respondents' arguments and finds them to be without merit.  Accordingly, and for the reasons stated above, Respondents' objections are overruled. Thus, the Court ADOPTS the Bankruptcy Court's proposed findings of fact and conclusions of law in their entirety and GRANTS summary judgment to the Trustee.  The Clerk of Court is directed to enter judgment in the Trustee's favor consistent with this Opinion and Order (and the Bankruptcy Court's July 8, 2022 proposed findings of fact and conclusions of law) — that is, against Jofaz in the amount of $1,104,465.64; against Y&M in the amount of $197,192.04; and against Third Avenue in the amount of $89,912.07, plus 9% prejudgment interest from January 25, 2016 — and to close the case.

SO ORDERED.

Dated: March 14, 2023
      New York, New York

                               JESSE M. FURMAN
                            United States District Judge